## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : |
| **LORNA ALLEN,** | : |
| | : **Bankruptcy No. 04-29038-MBM** |
| Debtor. | : |
| | : |
| **Lorna Allen,** | : **Chapter 7** |
| Plaintiff, | : |
| | : |
| v. | : **Adversary No. 04-2870-MBM** |
| | : |
| **American Education Services, et. al.,** | : |
| Defendants. | : |

Appearances:    Lawrence H. Fisher, for Lorna Allen.
John P. Neblett, for Educational Credit Management
Corporation.

### **MEMORANDUM OPINION**

Lorna Allen, the instant debtor (hereafter "the Debtor"), commenced the instant adversary proceeding for the purpose of obtaining a determination by the Court that (a) to except from her Chapter 7 discharge $47,140 of collective pre-petition student loan debt that she owes to American Educational Services (hereafter "AES") will impose an undue hardship on her, and (b) said collective student loan debt is thus discharged pursuant to 11 U.S.C. § 727 rather than is nondischargeable pursuant to 11 U.S.C. § 523(a)(8). Educational Credit Management Corporation (hereafter "ECMC") is now the real party defendant given that, according to ECMC, it has acquired from AES all right, title and interest in the collective student loan debt that the Debtor now seeks to have discharged.

Both parties moved for summary judgment earlier in the instant adversary

proceeding, and the Court, in a Memorandum and Order of Court dated May 3, 2005, denied such summary judgment motions with prejudice, *see* In re Allen, 324 B.R. 278 (Bankr.W.D.Pa. 2005). A trial was held on the matter on August 10, 2005. For the reasons set forth below, the Court determines that $16,915 of such collective student loan debt is nondischargeable and $30,225 of such collective student loan debt is discharged.[1]

## **STATEMENT OF FACTS**

The Debtor, who is approximately 60 years old at the present time, incurred the student loan debt in question to finance her undergraduate studies, which studies culminated in the grant of a bachelor's degree. Although the Debtor obtained a bachelor's degree, she was unsuccessful in obtaining such degree in nursing, which was her chosen field, and therefore had to settle for a less marketable degree in liberal studies. The Debtor first began incurring her student loan indebtedness in 1995, when she would have been roughly 50 years old, and obtained her bachelor's degree in 2000, when she was roughly 55 years old.

The Debtor has worked on a part-time basis for a majority of the period during which her student loan indebtedness has been in repayment status. Such part-time employment was almost, if not entirely, exclusively with a grocery store

---

[1] The Court recognizes that the outstanding balance of the collective student loan debt owed to ECMC has undoubtedly increased since the bringing of the Debtor's adversary complaint due to the interim accrual of interest. In ECMC's pretrial statement, ECMC listed the outstanding balance due on such indebtedness at $52,471.98. For the sake of convenience, the Court shall refer to the total outstanding balance due on such indebtedness as $47,140.

at an hourly rate of slightly over minimum wage. In the roughly three-month period prior to the trial in the instant matter, the Debtor obtained full-time employment as an aging care manager for the Commonwealth of Pennsylvania. In her Schedule I that she completed prior to the beginning of such full-time employment, the Debtor indicated that her total gross monthly income equalled $1,008.28 and that her total net monthly income equalled $787.02 – such monthly figures equate to annual figures of $12,099 gross and $9,444 net. After obtaining full-time employment, the Debtor amended her Schedule I to reflect a total gross monthly income of $1,861.04 and a total net monthly income of $1,332.87 – such monthly figures equate to annual figures of $22,332 gross and $15,994 net. The amended $15,994 net monthly income figure reflects a payroll deduction of, *inter alia*, $111.67 for retirement contributions; a deduction for retirement contributions is not reflected in the earlier $787.02 net monthly income figure. The Debtor's adjusted gross income for the years 2001 – 2004 was as follows: 2001 – $15,067; 2002 – 16,608; 2003 – $17,139; 2004 – 13,527.

In her Schedule J that she completed prior to the beginning of her full-time employment, the Debtor indicated that her total monthly expenditures equalled $781, or just $6 less than her total net monthly income. In her amended Schedule J, the Debtor listed her total monthly expenses at $1,359, or roughly $26 more than her amended total net monthly income. The Debtor testified, and was not contradicted in her testimony, that the monthly amounts that she paid for certain of her utility, insurance, and real estate tax expenses were based on her ability to pay, and that such monthly expenditures, as one would expect,

3

increased correspondingly when she obtained her full-time employment – such expenditure increases appear to account for more than one-third of the $578 increase in monthly expenses indicated in the Debtor's amended Schedule J. Among the monthly expenses listed in the Debtor's Schedule J is charitable contributions, which expenditure increased from $80 to $130 between the two versions of the Debtor's Schedule J – the Debtor testified that her charitable contributions consist entirely of tithing to her church in the amount of 10 percent of her net pay.

      The Debtor consolidated her student loan indebtedness on December 10, 2003, into two discrete consolidation loans in the amounts of $16,915 and $30,225, which amounts total the $47,140 at issue herein. Exhibits indicate that, if the Debtor were to pay off the $47,140 balance under the graduated repayment plan requiring 300 installment payments, then the Debtor's monthly payment regarding such indebtedness would equal $241.45. Exhibits also indicate that, when the Debtor's gross monthly income equalled $1,008.28, her monthly installment payment on her student loan debt under the Income Contingent Repayment Plan (offered under the William D. Ford Direct Loan Program) (hereafter "WDF ICRP") would have equalled $51.98. Because the amount that one pays under the WDF ICRP varies with the level of one's income, and given the recent increase in the Debtor's income, the monthly amount that the Debtor would now pay under the WDF ICRP would necessarily have increased – according to the Court's own calculation, such monthly installment would have increased from $51.98 to an amount in excess of $200. The Debtor made one

4

payment of $146 on her student loan debt.  Other than such payment, the Debtor has taken advantage of forbearances with respect to such debt, and consolidated the same, as set forth above, at the end of 2003.

## **DISCUSSION**

11 U.S.C. § 523(a)(8), which statutory provision controls whether the Debtor's student loan debt to ECMC is excepted from her Chapter 7 discharge, provides, in pertinent part, that:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for an educational ... loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution ..., unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C.A. § 523(a)(8) (West 2004).  Because "undue hardship" is not defined in the Bankruptcy Code, courts have developed various tests to determine whether such hardship is present.  This Court, however, is constrained by the Third Circuit Court of Appeals' directive in In re Faish, 72 F.3d 298 (3rd Cir. 1995), wherein the Third Circuit held that the three-part test for "undue hardship" set forth in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2nd Cir. 1987) (per curiam),[2] "must now be applied by bankruptcy

---

[2]The three-part test set forth by the Second Circuit in its decision in Brunner originated in the district court decision that was ultimately affirmed by the

5

courts within the Third Circuit." Faish, 72 F.3d at 306. The Second Circuit in Brunner set forth its three-part test for "undue hardship" as follows:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396. Expanding upon the foregoing, the Third Circuit held in Faish that:

> [s]tudent loan debtors have the burden of establishing each element of the Brunner test. All three elements must be satisfied individually before a discharge can be granted. If one of the requirements of the Brunner test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability.

Faish, 72 F.3d at 306. The standard of proof by which a debtor must establish each element of the Brunner test is by a preponderance of the evidence. *See* In re Brightful, 267 F.3d 324, 327 (3rd Cir. 2001).

Before applying the Brunner/Faish test to the Debtor's student loan

---

Second Circuit. *See* In re Brunner, 46 B.R. 752, 756 (S.D.N.Y. 1985), *aff'd*, 831 F.2d at 396. The Second Circuit, as part of its rationale for affirming the district court decision, adopted the aforementioned three-part test. *See* Brunner, 831 F.2d at 396.

6

indebtedness to ECMC, the Court observes that § 523(a)(8) does not contain language that would permit a court to determine that an educational loan is nondischargeable only to the extent that excepting said debt from a discharge would not impose an undue hardship on a debtor. In other words, a court cannot determine that a debtor should remain obligated to repay a portion of a particular educational loan while the remainder thereof can be discharged on the ground of "undue hardship." In re Hinkle, 200 B.R. 690, 693 (Bankr.W.D.Wash. 1996). However, "while a bankruptcy court cannot restructure the loans [in that manner], there is no reason[, given that § 523(a)(8) expressly refers to "debt" in the singular,] that it cannot treat each one separately for the purpose of dischargeability, if the loans have not been consolidated by agreement of the parties." Id. In light of the foregoing, and because the Debtor's student loan debts, although they have been consolidated, have been consolidated into two discrete loans (one for $16,915 and the other for $30,225), the Court can view each one of those two loans separately for nondischargeability purposes under § 523(a)(8); the only thing that the Court is precluded from doing is breaking up for nondischargeability purposes either or both of said consolidation loans.

**I.     The Third Prong – The Debtor's Good Faith.**

ECMC focuses at length on whether the Debtor has made good faith efforts to repay her loans to ECMC. "'Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses.' ... 'Good faith is also measured by a debtor's effort – or lack thereof – to negotiate a repayment plan.'" In re Marks, 2003 WL 22004844 at 5 (N.D.Cal. 2003) (quoting

7

In re Birrane, 287 B.R. 490, 499 (B.A.P. 9th Cir. 2002)); *see also* Pelliccia v. U.S. Department of Education, 2003 WL 21024825 at 3 (3rd Cir. 2003) (unpublished, nonprecedential decision) ("a court inquiring whether a debtor has made a good faith effort to repay a student loan must consider the following factors: (1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities, and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy").

ECMC successfully opposed the Debtor's summary judgment motion in the instant matter on the ground that a genuine dispute exists regarding such good faith by the Debtor, and sought summary judgment itself – unsuccessfully – solely on the basis that the Debtor lacked such good faith. The Court, in disposing of the parties' dueling summary judgment motions, held – and reaffirms such holding now – that the Debtor did not exhibit bad faith by (a) failing to take advantage of the WDF ICRP, *see* Allen, 324 B.R. at 281-82 & 284, and (b) failing to dedicate to the repayment of her student loan debt any of the $23,000 that she borrowed roughly two years prior to when her student loans first went into repayment status, *see* Id. at 283-84.

As for whether the Debtor maximized her income – for which issue the Court identified a genuine dispute at the summary judgment stage, thereby allowing ECMC to withstand the Debtor's summary judgment, *see* Id. at 283 – the Court now finds, after trial, that the Debtor did not exhibit bad faith by virtue of her employment history during the time that her indebtedness to ECMC was in repayment status. The Court holds as it does, in part, because the Debtor

8

testified, was not contradicted in her testimony, and the Court accordingly finds in turn, that (a) she applied for numerous full-time positions subsequent to obtaining her bachelor's degree, (b) she eschewed those positions that she could have obtained, or did obtain, in favor of her part-time grocery store employment because such employment, in contrast to said other positions, afforded substantially greater benefits, including free healthcare, and (c) she shunned other employment with the grocery store chain for which she worked part-time because such other employment would have required a concomitant increase in transportation expense that likely would have all but eaten up any favorable differential in income. The Court also holds as it does because the Debtor ultimately was offered, accepted, and has since commenced suitable full-time employment with her present employer, thereby evidencing, at least in part, that the Debtor never had the intention to purposefully minimize her income.

ECMC also appears to argue now that the Debtor never intended to repay her student loan indebtedness from its inception, and that she consequently lacked good faith. As support for such contention, ECMC relies on (a) the fact that the Debtor now points to her age as one circumstance that would justify discharge of her student loan indebtedness, and (b) the realization that the Debtor must have had when she incurred such debt at a relatively advanced age – i.e., 50 to 55 years of age – that such debt might likely not be fully repaid until she was even much older. The Court must reject such argument, however, because, and as the Debtor credibly testified, she borrowed to finance her college education with the expectation – ultimately not realized by her – that she

would obtain a degree in nursing, which degree undoubtedly would have been much more marketable than the one that she ultimately obtained; because the Debtor did not ascertain that she would not graduate with a degree in nursing until most of her student loan debt had already been incurred, the Court cannot find that, when the Debtor incurred such debt, she never had any intention of repaying the same after her graduation.

In light of all of the foregoing, the Court finds that the Debtor has preponderantly proven that she exhibited good faith relative to the repayment of her student loan indebtedness.

## II. **The First Two Prongs – The Debtor's Ability to Pay and Her Circumstances.**

At the outset, the Court makes the following factual findings and legal conclusions regarding the Debtor's ability to repay her student loan indebtedness and whether circumstances exist that would indicate that such ability will likely not improve for a significant portion of the repayment period for such indebtedness:

1. The Debtor, by virtue of her present employment, is maximizing her income;

2. Given the Debtor's relative lack of experience and her relatively advanced age at the present time, her employment prospects and earning ability will not improve, at least appreciably, during the balance of the repayment period for her indebtedness to ECMC;

3. Given the Debtor's relatively advanced age at the present time as well as

the fact that she does not presently possess any savings for her retirement, a payroll deduction for $111.67 for retirement contributions is not only reasonable but, the Court holds as a matter of law, is also allowable within the context of an "undue hardship" analysis under § 523(a)(8), see In re Savage, 311 B.R. 835, 842-43 & n.11 (B.A.P. 1st Cir. 2004) (noting split of authority within "undue hardship" analysis context, as well as that the Third Circuit, among other courts, has held, in an indirectly related context, that retirement contributions must be included in disposable income for purposes of Chapter 13 plan confirmation[3]);

4. The Debtor's deep religious convictions notwithstanding, an expenditure for tithing is not allowable within the context of an "undue hardship" analysis under § 523(a)(8), see Savage, 311 B.R. at 842 (noting split of authority[4]); and

5. Save for the $130 monthly expenditure for tithing, the monthly expenses that are set forth in the Debtor's Schedule J are reasonable for purposes of an "undue hardship" analysis under § 523(a)(8), that is without such

---

[3]This Court acknowledges such split of authority and sides with those courts that hold that retirement contributions, reasonable in amount, are allowable within the context of an "undue hardship" analysis under circumstances such as are present herein, namely where a debtor is fairly close to retirement, has not thus far saved anything for retirement, and is not likely to improve his or her earnings ability such that he or she could otherwise save for retirement.

[4]This Court acknowledges such split of authority and sides with those courts that hold that tithing may not be done at the expense of student loan creditors, notwithstanding that it is allowable in other contexts such as, for instance, 11 U.S.C. § 1325.

expenditures the Court does not find that the Debtor could maintain a "minimal" standard of living for herself.

In light of the foregoing, the Court finds that the Debtor has $130 per month that she could dedicate to the repayment of her student loan indebtedness.[5] Because the Debtor's consolidation loan for $16,915 represents approximately 36 percent of her total student loan indebtedness of $47,140, and since the Court presumes that the monthly installment payment that would be due only for such loan equals approximately 36 percent of $241.45, or approximately $87, the Court finds that the Debtor could maintain a minimal standard of living for herself if forced to repay such loan. Accordingly, the Court holds, with respect to the $16,915 consolidation loan that the Debtor owes to ECMC, that (a) the Debtor has not preponderantly satisfied the first of the three prongs under the Brunner/Faish test, (b) excepting such debt from the Debtor's discharge thus will not impose an undue hardship on the Debtor, and (c) such debt is consequently nondischargeable pursuant to § 523(a)(8).

However, because the Debtor's consolidation loan for $30,225 represents approximately 64 percent of her total student loan indebtedness of $47,140, and since the Court presumes that the monthly installment payment that would be due only for such loan equals approximately 64 percent of $241.45, or

---

[5]Although the Court finds that the $130 per month that the Debtor presently dedicates to tithing must instead be dedicated to the repayment of her student loan indebtedness, the Debtor is free if she wishes, of course, to continue tithing by reallocating some part of the remainder of her income to tithing, such as by reducing what the Court finds to be her reasonable contribution to a retirement plan.

approximately $154.45, the Court finds that the Debtor could not maintain a minimal standard of living for herself if forced to repay such loan, either by itself or, of course, in conjunction with the $16,915 consolidation loan. Therefore, the Court holds, with respect to the $30,225 consolidation loan that the Debtor owes to ECMC, that the Debtor has preponderantly satisfied the first of the three prongs under the Brunner/Faish test. Because the Court also holds, as set forth above, that circumstances – namely the Debtor's relative lack of experience and her relatively advanced age at the present time – exist that would indicate that the Debtor's employment prospects and earning ability will not improve, at least appreciably, during the balance of the repayment period for the $30,225 consolidation loan, the Court further holds that the Debtor has preponderantly satisfied the second of the three prongs under the Brunner/Faish test with respect to such debt.[6] Finally, because the Court, as set forth above, also holds

---

[6]ECMC cites to the decision in In re DeRose, 316 B.R. 606 (Bankr.W.D.N.Y. 2004), as standing for the proposition that the Debtor's age cannot qualify as an "additional circumstance" that would satisfy the second Brunner/Faish prong, and contends that the DeRose court so held, in part, because of the relatively advanced age of the debtor therein when she incurred her student loan indebtedness. In fact, the DeRose court explicitly held "that the age of the student/debtor *when the debts were incurred* must have no *relevance whatsoever* to the Prong 2 inquiry ... [and that h]er *current* age *is* relevant." See Id. at 609 (emphasis theirs). Thus, the DeRose court recognized that age could conceivably qualify as an "additional circumstance." The DeRose court ultimately held that age did not so qualify therein because of the availability to the debtor therein of the WDF ICRP. *See* Id. at 609. This Court disagrees with such holding by the DeRose court regarding the WDF ICRP for precisely the same reason that it held earlier that the Debtor did not exhibit bad faith by failing to take advantage of the WDF ICRP, namely that "the Debtor would thus most likely be harmed were she to take advantage of the WDF ICRP," *see* Allen, 324 B.R. at 282 (such harm arising because she would ultimately incur a substantial, nondischargeable tax obligation were she to utilize the WDF ICRP).

that the Debtor has not exhibited bad faith vis-a-vis the repayment of her student loan indebtedness, the Court must hold, with respect to the $30,225 consolidation loan, that (a) the Debtor has preponderantly satisfied each of the three prongs under the Brunner/Faish test, (b) excepting such debt from the Debtor's discharge thus would impose an undue hardship on the Debtor, and (c) such debt is consequently not excepted from discharge pursuant to § 523(a)(8).

## **CONCLUSION**

For all of the foregoing reasons, the Court determines that $16,915 of the Debtor's student loan indebtedness to ECMC is nondischargeable pursuant to § 523(a)(8), and $30,225 of such student loan indebtedness is discharged.

An appropriate order will be entered.

        **BY THE COURT**

        _/s/_
        **M. BRUCE McCULLOUGH,**
        **U.S. Bankruptcy Judge**

**DATED:    September 14, 2005**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : |
| **LORNA ALLEN,** | : |
| | : **Bankruptcy No. 04-29038-MBM** |
| Debtor. | : |
| ............................................................. | :................................................................... |
| **Lorna Allen,** | : **Chapter 7** |
| Plaintiff, | : |
| | : |
| v. | : **Adversary No. 04-2870-MBM** |
| | : |
| **American Education Services, et. al.,** | : |
| Defendants. | : |

## ORDER OF COURT

**AND NOW,** this **14th day** of **September, 2005**, upon consideration of the nondischargeability adversary complaint filed by Lorna Allen, the instant debtor and plaintiff herein (hereafter "the Debtor"), wherein the Debtor seeks a determination that her student loan indebtedness of $47,140 owed to Educational Credit Management Corporation (hereafter "ECMC"), who is now the real party defendant, is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8);

and subsequent to notice and a trial on the matter held on August 10, 2005;

and for the reasons set forth in the accompanying Memorandum Opinion dated **September 14, 2005**;

it is **hereby ORDERED, ADJUDGED, AND DECREED** that **$16,915** of the Debtor's student loan indebtedness to ECMC is **NONDISCHARGEABLE** pursuant to § 523(a)(8), and **$30,225** of such student loan indebtedness is **DISCHARGED**.

**BY THE COURT**

_/s/_
**M. BRUCE McCULLOUGH,
U.S. Bankruptcy Judge**

cm: Lawrence H. Fisher, Esq.
Akman & Associates, P.C.
345 Southpointe Blvd., Suite 100
Canonsburg, PA 15317

John P. Neblett, Esq.
Suite 203
2040 Linglestown Road
Harrisburg, PA 17110

(Parties to be served electronically by Case Administrator)